Justice Souter,
concurring in part, says:
“[The requisite] element of intention would normally be satisfied by the intent inferred on the part of the domestic abuser in the classic abusive relationship, which is meant to isolate the victim from outside help, including the aid of law enforcement and the judicial process. If the evidence for admissibility shows a continuing relationship of this sort, it would make no sense to suggest that the oppressing defendant miraculously abandoned the dynamics of abuse the instant before he killed his victim, say, in a fit of anger.” Ante, at 380.
This seems to say that a showing of domestic abuse is sufficient to call into play the protection of the forfeiture rule in a trial for murder of the domestic abuse victim. Doing so when, in fact, the abuser may have had other matters in mind apart from preventing the witness from testifying is in effect *405 not to insist upon a showing of “purpose.” Consequently, I agree with this formulation, though I would apply a simple intent requirement across the board.
V
The rule of forfeiture is implicated primarily where domestic abuse is at issue. In such a case, a murder victim may have previously given a testimonial statement, say, to the police, about an abuser’s attacks; and introduction of that statement may be at issue in a later trial for the abuser’s subsequent murder of the victim. This is not an uncommon occurrence. Each year, domestic violence results in more than 1,500 deaths and more than 2 million injuries; it accounts for a substantial portion of all homicides; it typically involves a history of repeated violence; and it is difficult to prove in court because the victim is generally reluctant or unable to testify. See Bureau of Justice Statistics, Homicide Trends in the U. S. 1976-2005, online at http:// www.ojp.usdoj.gov/bjs/homicide/tables/relationshiptab.htm (as visited June 23, 2008, and available in Clerk of Court’s case file); Dept. of Health and Human Services, Centers for Disease Control and Prevention, National Center for Injury Prevention and Control, Costs of Intimate Partner Violence Against Women in the United States 19 (2003); N. Websdale, Understanding Domestic Homicide 207 (1999); Lininger, Prosecuting Batterers after Crawford, 91 Va. L. Rev. 747, 751, 768-769 (2005).
Regardless of a defendant’s purpose, threats, further violence, and ultimately murder can stop victims from testifying. See id., at 769 (citing finding that batterers threaten retaliatory violence in as many as half of all cases, and 30 percent of batterers assault their victims again during the prosecution). A constitutional evidentiary requirement that insists upon a showing of purpose (rather than simply intent or probabilistic knowledge) may permit the domestic *406 partner who made the threats, caused the violence, or even murdered the victim to avoid conviction for earlier crimes by taking advantage of later ones.
In Davis, we recognized that “domestic violence” cases are “notoriously susceptible to intimidation or coercion of the victim to ensure that she does not testify at trial.” 547 U. S., at 832-833. We noted the concern that “[w]hen this occurs, the Confrontation Clause gives the criminal a windfall.” Id., at 833. And we replied to that concern by stating that “one who obtains the absence of a witness by wrongdoing forfeits the constitutional right to confrontation.” Ibid. To the extent that it insists upon an additional showing of purpose, the Court breaks the promise implicit in those words and, in doing so, grants the defendant not fair treatment, but a windfall. I can find no history, no underlying purpose, no administrative consideration, and no constitutional principle that requires this result.
Insofar as Justice Souter’s rule in effect presumes “purpose” based on no more than evidence of a history of domestic violence, I agree with it. In all other respects, however, I must respectfully dissent.